IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION



FILED
SEP 30 2001
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF A

| | |
|---|---|
| GREGORY B. BANKSTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION NUMBER |
| v. ) | |
| ) | 99-C-2310-NE |
| NATIONAL AERONAUTICS AND ) | |
| SPACE ADMINISTRATION, et. al., ) | |
| ) | |
| Defendants. ) | |

ENTERED
OCT 1 2001

## MEMORANDUM OPINION

Presently before the Court is Defendants' Motion to Dismiss In Part And For Summary Judgment in Part. In their motion, Defendant National Aeronautics and Space Administration ("NASA"), and NASA administrator Dan Goldin, (hereinafter collectively referred to as "NASA") ask this Court to dismiss certain claims brought against them by *pro se* plaintiff, Gregory B. Bankston, ("Bankston") and to grant summary judgment on the remaining claims. Bankston, a former NASA employee, raises numerous claims in this action: 1) race discrimination, retaliation and harassment, 2) constitutional due process violations, and 3) defamation claims. (Doc. 1.) The Court finds that defendants are entitled to summary judgment or dismissal on all claims.

### I. FACTS

Bankston began working at NASA's Marshall Space Flight Center ("MSFC"), located in

1

Huntsville, Alabama, in June 1994. Bankston's employment with NASA, as an Electronics Specialist, with ended in early 1996, when he was "removed."[1] Initially William Chisholm ("Chisholm") supervised Bankston. In 1994, Chisholm issued Bankston a "Letter of Instruction," or disciplinary letter, regarding Bankston's absences from work. (Doc. 32, Tab. A at Gov. Ex. E.) In that letter, Chisholm informed Bankston of certain procedures for Bankston to follow regarding attendance and leave. Specifically, Chisholm required that Bankston sign-in and sign-out for work daily, obtain advanced approval to take leave, and contact a supervisor when emergency leave was necessary. Chisholm indicated that he was implementing these procedures because of Bankston's "frequent absences" from work, "unscheduled leave practices" and the "disruption" caused by such conduct. (*Id.*) Bankston admits that he understood how to follow the procedures. (Doc. 32, Tab A, Bankston Dep. at p. 24.)

In January 1995, Bankston was detailed to another department where he worked for Johnny F. Robinson ("Robinson"). Shortly thereafter, Robinson issued another "Letter of Instruction," reiterating the leave procedures, but eliminating the sign-in and sign-out requirement. Bankston stipulates that he understood how to follow the procedures implemented by Robinson. (Doc. 32, Tab A, Bankston Dep. at pp. 33-34.)

Later, Bankston returned to Chisholm's department. Around May 1995, Bankston sought promotion to an auditor position. In connection with the promotion application process, Bankston submitted a performance appraisal form bearing the signature of "supervisor" Charles Baugher ("Baugher"). The parties dispute whether Baugher was actually Bankston's supervisor.

---

[1] The parties use the term "removed" to refer to Bankston's termination.

On July 25, 1995, Chisholm suspended Bankston after several AWOL incidents.[2] The following day, Bankston filed a complaint with the MSFC's internal EEO office. (Doc. 32, Tab A, Bankston Dep. at Ex. 2, Request For Admission #14.)

On October 12, 1995, Gregory S. Wilson ("Wilson"), the director of Bankston's department, sent a letter to Bankston proposing his removal. Wilson gave two reason for the proposed removal. First, Wilson accused Bankston of "[f]alsifying a material fact in connection with an application for promotion." (Doc. 32, Tab A at Govt. Ex. G.) Wilson alleged that Baugher had not, in fact, signed the performance appraisal Bankston submitted in support of his application for the promotion. (*Id.*) Second, Wilson proposed to remove Bankston for "[r]epeated absence[s] without approved leave." (Doc. 32, Tab A at Govt. Ex. G.) Wilson listed each day that Bankston was absent and the amount of time Bankston allegedly took leave without approval. (*Id.*)

Bankston responded in writing to the removal letter by admitting that Baugher was not a supervisor of record, but Bankston never denied falsifying Baugher's signature or denied the AWOL charges. (Doc. 32, Tab A at Govt. Ex. D.) On January 16, 1996, then department head James M. McMillion sustained Bankston's removal. (Doc. 32, Tab A at Govt. Ex. H.) Bankston utilized the Merit System Protection Board's ("MSPB") administrative review process to challenge his removal. While the Administrative Law Judge ("ALJ") found that the administration failed to establish that Bankston was AWOL for some of the hours at issue, the

---

[2] Because the organization of NASA's evidentiary submission is sometimes confusing, the Court was unable to locate documentation of this suspension. However, Bankston does not dispute that NASA suspended him.

3

ALJ ultimately upheld the removal after finding that Bankston had been AWOL on thirty-one instances, for a total of 94.25 hours. (Doc. 40, AR at 899-900). The MSPB affirmed the removal. Bankston responded by filing the present lawsuit.

## II. STANDARD OF REVIEW

Because Bankston alleges non-discriminatory adverse employment action, along with discriminatory adverse employment action by NASA, the present dispute involves a "mixed case." *See Kelliher v. Glickman*, 134 F. Supp.2d 1264, 1275-76 (M.D. Ala. 2001) (citing 5 U.S.C. § 7703; *Chandler v. Roundebush*, 425 U.S. 840 (1976)). "When a plaintiff appeals from a MSPB decision, the district court reviews ... [the] non-discrimination claims on the administrative record ...." *Holifield v. Reno*, 115 F.3d 1555, 1561 (11th Cir. 1997) (citations omitted). In doing so, the district court must apply the deferential administrative review standard to the non-discrimination claim. *Burrell v. United States Postal Service*, No. Civ. A 00-3273, 2001 WL 388056, * at 4 (E. D. La.) (citing 5 U.S.C. 7703(c)). Specifically, "the court may set aside an agency action only if arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, procedurally infirm, or unsupported by substantial evidence." *Kelliher*, 134 F. Supp.2d at 1275 (citing 5 U.S.C. § 7703(c)). Conversely, the district court applies a *de novo* standard when reviewing the discrimination claim. *Burrell*, 2001 WL 388056, * at 4 ((citing 5 U.S.C. 7703(c)).

Summary judgment is appropriate only where the material facts are not in dispute and the moving party is entitled to judgment as a matter of law. In passing on a summary judgment motion, all reasonable inferences from the facts must be made in favor of the party who opposed

the motion. The movant bears the initial burden of showing the Court, by reference to materials on file, that no genuine issues of material fact exist. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986); *Clark v. Coates & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). After the moving party has discharged its burden, the non-movant must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995). "'Mere general allegations which do not reveal detailed and precise facts' will not prevent the award of summary judgment ...." *Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 592 (11th Cir. 1995) (citation omitted).

For purposes of a motion to dismiss, all the allegations in a Complaint are construed in light most favorable to the plaintiff. *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984). All facts alleged by Plaintiff are taken as true. Id. A court cannot dismiss for failure to state a claim unless "it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). The issue on a motion to dismiss is not whether the plaintiff will ultimately prevail; instead the determinative issue is whether the claimant is entitled to offer evidence to support the claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1994).

### III. ANALYSIS

A.  <u>Administrative Claims</u>.

Bankston presents no evidence that NASA acted arbitrarily, capriciously, or abused its discretion when it removed him. In his written response to the proposed removal, Bankston does not deny that he had forged Baugher's name, nor that he had been absent without leave. (Doc. 32, Tab A at Govt. Ex. D.) Indeed, Bankston admits that Baugher was not a supervisor of record.

5

(*Id.*)  Thus, NASA's decision to remove Baugher was not arbitrary or capricious.

The MSPB similarly did not act arbitrarily or capriciously.  During the administrative review of Bankston's removal, Baugher consistently denied signing Bankston's performance appraisal.  In response to Baugher's denials, Bankston claims he did not forge Baugher's signature and was not aware of anyone forging the signature. (Doc. 40, AR at pp. 1004-7.) However, Bankston admits that he himself fraudulently dated document three years after Baugher alledgedly signed it in 1992.  (*Id* at 890-91.)  Additionally, while the parties dispute whether Baugher ever supervised Bankston, Bankston admits that Baugher was not a supervisor of record.  (Doc. 32, Tab A at Govt. Ex. D.)  Bankston also admits that he had saved documents bearing Baugher's signature, but Bankston had no other performance appraisal forms signed by Baugher.  (Doc. 40, AR at pp. 1004-7.)  Given this unusual set of circumstances, the MSPB did not act arbitrarily or capriciously when it chose to credit both Baugher's testimony, that he had not signed the form, and NASA's position that Baugher never supervised Bankston.

Similarly, the MSPB did not act arbitrarily or capriciously when it upheld the removal based upon the evidence regarding the AWOL charges.  During the administrative process, Bankston admitted that he had requested leave, but his leave requests were denied. (Doc. 40, AR at p. 1016.)  Accordingly, NASA is entitled to summary judgment on Bankston's non-discrimination based challenge to his removal.

B.      Discrimination Claims

Bankston may establish a prima facie case of discrimination using statistical proof of a pattern of discrimination, using direct evidence of discrimination, or using "circumstantial

6

evidence to prove discriminatory intent, using the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 93 S.Ct. 1817, 1824- 25, 36 L.Ed.2d 668 (1973)." *Holifield v. Reno*, 115 F.3d at 1561, 1561-62 (11th Cir. 1997).

        1.      **Disparate Treatment Claim: Bankston does not have direct evidence.**

"Direct evidence is that which shows an employer's discriminatory intent 'without any inference or presumption.'" *Hinson v. Clinch County, Georgia Bd. Of Educ.*, 231 F.3d 821, 827 (11th Cir. 2000) (citation omitted). Bankston contends that he has direct evidence of discrimination. Specifically, Bankston complains about comments by supervisor Chisholm regarding "plaintiff being black and discussion of law suit ...." (Pl.'s Reply Br. at p. 5.) Additionally, Bankston argues that Baugher made statements about black individuals employed by NASA for "look purposes." (*Id.*)

The comments about which Bankston complains do not constitute direct evidence. Bankston never spells out precisely what comments Chisholm made "about plaintiff being black" or about Bankston's lawsuit. Without such information, Bankston cannot establish that Chisholm's comments constitute direct evidence. After an employee files a discrimination lawsuit against his employer, both co-workers and supervisors are likely to discuss the lawsuit and the plaintiff's claims. Because such discussions may or may not contain statements evidencing racial animus, a great deal of "inference or presumption" would be necessary for a jury to determine that unspecified comments about the lawsuit and the plaintiff's race establish the "employer's discriminatory intent." *See Hinson*, 232 F.3d at 827. Accordingly, Bankston presents no evidence that Chisholm's comments constitute direct evidence of discrimination.

Bankston's direct evidence argument also fails as it relates to the comment he attributes to Baugher, about black individuals employed by NASA for "look purposes." (Pl.'s Reply Br. at p. 5.) The comment about which Bankston complains arose during litigation of the present dispute. In defense of Bankston's administrative appeal, NASA obtained an affidavit from Baugher containing, *inter alia*, statements about his work with other black employees and how many "blacks" worked in his division. (Doc 43, Plx.'s Evid. Submission, Baugher Aff. at p. 2.) On the affidavit, in typeface, Baugher indicates "4 blacks" work in his division." (Doc 43, Baugher Aff. at p. 2.) However, in handwriting, he crosses out the "4" and replaces it with a "3." Doc 43, Baugher Aff. at p. 2.) Baugher then adds a sentence in his handwriting. According to Bankston the sentence reads "A forth and fifth black are functionally assigned to the Division for *look* purposes but administratively assigned to another Division for time keeping, supervision, etc." (*See* Doc 43, Baugher Aff. at p. 3.) NASA argues that the sentence actually reads "A forth and fifth black are functionally assigned to the Division for *work* purposes but administratively assigned to another Division for time keeping, supervision, etc." Were this Court serving as a fact finder, the Court would be inclined to agree that the sentence reads as explained by NASA because the first letter of the word in question does not look like the letter "l," as that letter appears in other words in the sentence, such as "administratively," "functionally," or "black." (Doc 43, Baugher Aff. at p. 3.) However, in this instance, the Court cannot act as a fact finder.

A finding of fact is unnecessary to resolve the current dispute because Baugher was not a decision maker involved in Bankston's removal. Additionally, Bankston presents not evidence

that any of the decision makers [3] relied on input from Baugher *See Mauter v. Hardy Corp.*, 825 F.2d 1554, 1558 (11th Cir. 1987) (finding that comment by supervisor did not constitute direct evidence where it was undisputed that the supervisor did not take part in the decision to terminate the plaintiff). Accordingly, the comment attributed to Baugher cannot constitute direct evidence.

> 2. **Disparate Treatment Claim; Bankston cannot establish a prima facie case of discrimination and he has no evidence of pretext.**
>
> a) Bankston cannot establish a prima facie case.

Absent direct evidence, Bankston may establish a prima facie case of discrimination using circumstantial evidence "by showing: (1) he belongs to a racial minority; (2) he was subjected to adverse job action; (3) his employer treated similarly situated employees outside his classification more favorably; and (4) he was qualified to do the job." *Holifield*, 115 F.3d at 1561-62. NASA argues that summary judgment is appropriate because: 1) Bankston does not point to any comparators and therefore cannot establish a prima facie case for discrimination, and 2) Bankston presents no evidence that NASA's legitimate non-discriminatory reasons for his removal are pre-textual.

The Court agrees. Bankston fails to establish a prima facie case of discrimination because he directs the Court to no comparators who were treated more favorably under circumstances similar to his. Indeed, Bankston points to no comparators at all. In his interrogatory responses, Bankston identifies white comparators by referring the reader to

---

[3] Apparently, two persons had input in the removal decision: Williams, as the initial department director who recommended the removal, and McMillion, the final department director who finalized the removal.

"plaintiff exhibit 10-A through 10-B." (Doc. 32, Tab A, Bankston Dep. at Defs.' Ex. 3, pp. 3-4, Interrogatory response 14.) However, Bankston's exhibit 10-A merely contains a list of employees, including Bankston, who worked in his department. (Doc. 43, Tab 9, Ex. 10-A.)[4] While some of the names on the list have dots behind them, Bankston does not explain the meaning of the list. (*See id.*) The first page of Bankston's exhibit 10-B contains notes concerning the topics discussed at a division meeting. (Doc. 43, Tab 9, Ex. 10-B.) The second page of that exhibit includes a note that leave, "must be approved in advance." (*Id.*) The evidence establishes that all employees were expected to request leave in advance, not just Bankston. Bankston does not direct the Court to any evidence regarding comparators in his reply brief either. Instead, he merely responds that "there is Evidence that Similarly Situated white employees were treated differently." (Plx.'s Reply Br. at pp. 1, 4.) Finally, in his deposition Bankston still fails to provide specific evidence. He merely states in his deposition that Chisholm did not require white employees to sign-in, sign-out or follow the same leave approval procedures. (Doc. 32, Tab A, Bankston Dep. at p. 72-73.) Such conclusory evidence is not sufficient to withstand a motion for summary judgment. *See Resolution Trust Corp v. Dunmar Corp.*, 43 F.3d 587, 592 (11th Cir. 1995) (citation omitted) ("Mere general allegations which do not reveal detailed and precise facts' will not prevent the award of summary judgment ....") (citation omitted). Further, Bankston does not provide evidence that any of the white employees had absenteeism or attendance problems, as did he. (Doc. 40, AR at p. 1074.) Comparators must be similarly situated to the plaintiff in "all relevant aspects." *Silvera v. Orange County Sch. Bd.*,

---

[4] Bankston's exhibit 10-A and 10-B actually appear behind tab number nine, rather than tab number ten.

244 F.3d 1253, 1259 (11th Cir. 2001).

                        b) Bankston has no evidence of pretext.

Even if Bankston could make out a prima facie case for discrimination, his disparate treatment claim still fails because he has no evidence from which a jury might find that NASA's legitimate non-discriminatory reasons for removing him were pre-textual. At the time McMillion made the decision to remove Bankston, McMillion provided two primary reasons for the agency's decision: 1) "[f]alsification of a material fact in connection with an application for promotion," and 2) repeated absence without approved leave. (Doc. 32, Tab. A at Govt. Ex. H.)

With respect to the falsification charge, McMillion notes in his removal letter that Bankston had sought a promotion and supported his application by submitting a performance appraisal form, containing the purported signature of Charles Baugher who denied signing the form. (*Id.*) The appraisal gives Bankston the highest possible rating in all categories. (Doc. 40, AR at pp. 997, 1093-4.) McMillion also notes that Bankston does not, through his written response, deny the falsification allegation or explain how Baugher's signature came to appear on the form. (Doc 32, Tab A at Govt. Ex. H ; *see* Doc. 32, Tab A at Govt. Ex. D.) Instead, Bankston merely argues that the accuracy of Baugher's signature "is not the issue." (Doc 32, Tab A at Govt. Ex. H; Doc. 32, Tab A at Govt. Ex. D.) In reaching his decision to terminate Bankston, McMillion explains that submitting falsified performance rating as a part of the application was "an issue of utmost seriousness." (Doc. 32, Tab A at Govt. Ex. H.)

With regard to Bankston's excessive absences, McMillion notes that, Bankston also does not deny any of the alleged instances of absence without approved leave. Further, Bankston's

response offers no evidence that would refute his AWOL status for the instances spelled out in the proposed removal. After noting that neither the falsification charge or the AWOL charge provided sufficient reason for removal, McMillion explains that he had reached the removal decision only after considering the evidence, along with Bankston's limited tenure of four and one half years, Bankston's repeated violations of the leave procedures, and Bankston's potential for rehabilitation. (*Id.*)

In his reply to NASA's motion for summary judgment, Bankston argues that he has evidence that these reasons for his removal were pretextual. As evidence of pretext, Bankston contends that a personnel department employee told Bankston he could use a previous supervisor's performance evaluation to support his application for the promotion and he had did not forge Baugher's signature on the form. (Doc. 40, AR at pp. 1004, 1007,1083,1087; Doc. 32, Tab A, Bankston Dep. at pp. 62-63.)

No jury could find pretext based upon this evidence. Even assuming, as the Court must, the veracity of Bankston's contentions, Bankston provides no evidence that McMillion held racial animus when he removed Bankston after: 1) Bankston admitted Baugher was not a supervisor of record and he claimed that the authenticity of Baugher's signature was "not the issue." Similarly, no evidence of racial animus or pretext exists where Bankston responded to the AWOL charges by explaining only that an outside investigation would clear up the matter, and not that the allegations of improper absenteeism were untrue. Moreover, as discussed above, Bankston points to no favorable treatment of a white employee under similar circumstances. (Doc. 40, AR at p. 1074.)

Additionally, Bankston's testimony establishes that he submitted the performance

evaluation under circumstances that, at best, might be described as questionable. During discovery, Bankston admitted that he not only discussed the performance evaluation with Baugher in 1992, but that *Bankston also obtained Baugher's signature in 1992* and then dated the evaluation May 30, 1995. (Doc. 40, AR at pp. 997, 1–4. 1007, 1093-4; Doc. 32, Tab A, Bankston Dep. at p. 53-54, 58-59.) Bankston further admits that Baugher did not sign any other appraisal forms for Bankston, despite Bankston's claims that, in the past, Baugher had supervised Bankston. (Doc. 40, AR at pp. 998-999.) Rather than provide evidence of pretext, Bankston's evidence merely support's NASA's decision.

Next, Bankston argues that NASA's failure to discipline Chisholm for a "finger pointing" incident is evidence of pretext. Specifically, Bankston describes one, and possibly two, encounters during which Chisholm stood close, screamed and pointed his finger at Bankston. (Doc. 32, Tab A, Bankston Dep. at pp. 26- 31.) While Bankston testified that Chisholm later apologized for the incident(s), Bankston describes these incidents as threatening. Bankston reported these incidents to NASA officials and Bankston argues that the officials' failure to discipline Chisholm provides evidence of pretext..

Bankston does not explain, however, how this incident establishes pretext or even relates to his subsequent removal. Indeed, Bankston provides no evidence that he reported to NASA officials that he believed the incident had racial overtones. Additionally, Bankston does not indicate whether McMillion, the final decision maker involved in the removal, was the same decision maker that was involved in the decision to withhold discipline from Chisholm. In his deposition, Bankston testified that he believed that NASA's failure to discipline Chisholm indicated racial animus because Chisholm was white and Bankston was the only black in the

13

division. (Doc. 32, Tab A, Bankston Dep. at p. 73-74.) Under the present circumstances, Bankston needs to do more than point out these racial differences to establish evidence of pretext. Accordingly, summary judgment for NASA is appropriate on Bankston's disparate treatment claims.

### 3. **Retaliation.**

To establish a prima facie case for retaliation, Bankston must demonstrate:

> (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) there is some causal relation between the two events.... Once a plaintiff has established a prima facie case, the employer then has an opportunity to articulate a legitimate, non-retaliatory reason for the challenged employment action. The ultimate burden of proving by a preponderance of the evidence that the reason provided by the employer is a pretext for prohibited, retaliatory conduct remains on the plaintiff.

*Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001) (citations omitted). Bankston can establish a prima facie case for discrimination.[5] Bankston filed an internal EEO complaint with the MSFC on July 25, 1995, and was later removed from service, in January 1996. Ultimately, however, Bankston's retaliation claim fails because, as discussed above, Bankston presents no evidence of pretext.

### 4. **Harassment**.

To establish a claim for racial harassment, Bankston must establish that the alleged harassment "was sufficiently severe or pervasive to alter the terms and conditions of employment

---

[5] McMillion's sworn testimony that he was unaware of the EEO complaint is not sufficient to defeat the causal connection element.

and create a discriminatorily abusive working environment." *See Gupta v. Florida Bd. Of Regents*, 212 F.3d 571, 582-83 (11th Cir. 2000). As evidence of racial harassment, Bankston points to the sign-in and sign-out procedures, the leave approval requirement, and the finger pointing incident. (Doc. 32, Tab A, Bankston Dep. at p. 73.) Bankston fails, however, to provide any evidence that these incidents were "sufficiently severe or pervasive." *See id.*

B.  **Constitutional Due Process Claims**

In addition to his discrimination claims, Bankston also claims that NASA violated his constitutional due process rights. NASA argues that Bankston cannot bring constitutional claims under the present circumstances. *See Stephens v. Department of Health & Human Svc.*, 901 F.2d 1571 (11th Cir. 1990) ("The Supreme Court has recently explained that it will not permit additional remedies for alleged constitutional violations where 'Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration.'") (citing *Schweiker v. Chilicky*, 487 U.S. 412, 413 (1988)). Even if Bankston could bring constitutional due process claims, the evidence establishes that NASA gave Bankston both notice of the adverse employment action and an opportunity to be heard.

C.  **Defamation Claims**

Finally, brings claims for defamation against NASA under state tort law. As a federal entity, NASA cannot be sued without an explicit waiver of immunity. There has been no such waiver in the present action.

The United States cannot be sued unless it specifically consents to be sued, either by specific statutory consent, *United States v. Shaw,* 309 U.S. 495 (1940), or by instituting a suit as to which a defendant may plead matters in recoupment. *Frederick v. United States*, 386 F. 2d 481 (5th Cir. 1967). While the Federal Tort Claims Act waives immunity as to certain types of tort claims against the United States, Plaintiff's claims fall squarely within the Act's express exceptions. By its own terms, the Federal Tort Claims Act does not apply to "(a)ny claim arising out of . . libel, slander, misrepresentation, [or] deceit. . . ." 28 U.S.C. s 2680(h). Because the Act excepts from the waiver of sovereign immunity "libel" and "slander," treating the defamation claims as within the scope of employment eliminates them. *McLachlan v. Bell*, 261 F. 3d 908 (9th Cir. 2001).

Accordingly, the defamation claims against Defendant are due to be dismissed.

## V. CONCLUSION

For the above reasons, this Court finds that NASA is entitled to summary judgment on the race discrimination, retaliation and harassment, and constitutional due process claims and dismissal of the defamation claims. By separate order, the Court will grant the appropriate relief.

Done this 30th day of September, 2001.

Chief United States District Judge
U. W. Clemon